ELVA B. SNYDER *v.* AUGUSTA M. CEARFOSS

[No. 62, October Term, 1946.]

636

*Decided February 12, 1947.*

The causes were argued before MARBURY C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Douglas H. Gordon* and *W. Clinton McSherry*, with whom was *Ellsworth R. Roulette* on the brief, for the appellant.

*Walter E. Sinn* and *Parsons Newman* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

These two suits in assumpsit were instituted in the Circuit Court for Washington County by Elva B. Snyder, the first as administratrix of the estate of her mother, Malinda Summers, the second as administratrix of the estate of her aunt, Mary A. Hughes, against Augusta M. Cearfoss, executrix of the estate of Jesse O. Snyder.

Two questions of pleading were raised in the first case. That case was filed by titling on April 2, 1943, and the declaration was filed on April 15. The rules of the Circuit Court for Washington County provide that where a defendant fails to plead within 30 days after the rule day to which he is summoned, judgment of *nil dicit* may be entered against him; and in all cases *ex contractu*, in which the declaration has been filed by the rule day and served upon the defendant or his attorney, judgment will be entered at the call of the trial docket on the first day of the term, unless the defendant or his attorney shall have filed an affidavit that he has a bona fide intention of making defense. In this case the rule day was April 5, and no pleading or affidavit of defense was filed within 30 days thereafter. At the call of the docket on May 10, plaintiff moved for judgment *nil dicit* and for judgment for plaintiff by default. But it appeared that the clerk of the court, who is required to notify defendants of the rule day for pleading, had put on the copy of the declaration served on defendant a notice that the return day was May 10 and the time to file pleas was

May 29. It is recognized that rules of court are necessary for the proper conduct of court proceedings, and ought to be observed in all cases that come within their purview. Hence, the court should not arbitrarily suspend or modify its own rules to suit the convenience of litigants in any given case. *Wall's Ex'x v. Wall,* 2 Har. & G. 79; *Dunbar v. Conway,* 11 Gill & J. 92, 97; *Hughes v. Jackson,* 12 Md. 450, 463; *Lovejoy v. Irelan,* 17 Md. 525, 79 Am. Dec. 667; *Thompson v. Hatch,* 3 Pick., Mass., 512, 516; *Rio Grande Irrigation & Colonization Co. v. Gildersleeve,* 174 U. S. 603, 19 S. Ct. 761, 43 L. Ed. 1103. However, the question here is whether the Court should have refused the motion to enter judgment by default. If the Court had followed the rule strictly and entered judgment for the plaintiff, it could have immediately stricken out the judgment if it thought that such action would serve the ends of justice, and no appeal would lie from the action of the  Court in striking out the judgment. 2 *Poe, Pleading and Practice,* Sec. 389. Here the Court's action was in effect the same when it refused to enter judgment by default. We find no reversible error in the Court's action in this respect. Merely because the Court did not follow the strictly technical procedure, we will not treat the matter any differently from the way we would otherwise be authorized to treat it.

The other question of pleading is whether the Court acted properly in receiving defendant's plea of limitations in the first case. Pleas of limitations are not pleas to the merits and must be filed within the time required by rules of court. Code, 1939, Art. 75, Sec. 47; *Lichtenberg v. Joyce,* 183 Md. 689, 39 A. 2d 789. It has generally been the practice in Maryland to require pleas of limitations to be filed by the rule day. *Wall's Ex'x v. Wall,* 2 Har. & G. 79; 1 *Poe, Pleading and Practice,* Sec. 618. The Washington County rule provides that pleas of limitations must be pleaded by the regular rule day, unless the time for pleading shall have been previously extended by the Court, or the clerk shall fail to make out and deliver a copy of the declaration according to rule. In this case the clerk did not make and deliver a copy of the declara-

tion according to rule, for it contained a notice which was erroneous and misleading both as to the return day and the time in which to plead. On May 17 the Court extended the time for pleading until 10 days after disposition of demand for bill of particulars. Subsequently, upon ordering plaintiff to file a bill of particulars, the Court extended the time for pleading to the declaration as particularized until 10 days after the filing of particulars. Still later, when a demurrer was filed to the declaration, the Court extended the time for filing pleas, including plea of limitations, until 10 days after disposition of the demurrer. Inasmuch as defendant filed her pleas, including the plea of limitations, within 10 days after the demurrer was overruled, we conclude that the plea of limitations was seasonably filed, and that the Court was right in refusing to strike out the plea.

We come now to the merits of the cases, which were tried together the first time before the three judges of the Circuit Court for Frederick County in May, 1945. It was shown at the trial that Abraham K. Snyder, of Clear Spring, executed a will in 1902 making his personal friend and attorney, Jesse O. Snyder, to whom he was not related, the principal beneficiary. In 1919 the testator suffered a stroke of paralysis and was taken to Laurel Sanitarium. There he executed a deed of trust appointing Jesse O. Snyder trustee for his estate, which then amounted to about $120,000. In February, 1920, the Circuit Court for Washington County assumed jurisdiction of the trust. In May, 1921, the testator was adjudged mentally incompetent in proceedings filed by his brother, Jacob H. Snyder, in Prince George's County; and Frederick H. Snyder, Jacob's son, and Henry F. Wingert, attorney, were appointed committee for the incompetent. The committee then filed suit in Washington County to recover possession of the estate from Jesse, who was administering it under the jurisdiction of the Court. On January 1, 1922, while the committee's suit was pending, the incompetent died in the sanitarium, leaving as his only next of kin his brother Jacob and his two sisters, Malinda Summers and Mary A. Hughes,

who were then living in Clear Spring. Plaintiff alleged that Jesse O. Snyder visited the surviving sisters on the day of Abraham's death and promised to pay each sister one-third of all he received from Abraham's estate if she would not join with Jacob in making any attack upon the will. Plaintiff further claimed that they forbore from attacking the will, but the attorney wrongfully refused to comply with his promise.

At the conclusion of the trial, the jury rendered a verdict for $29,521.62 in each case. Defendant thereupon filed motions for judgments *n. o. v.* and for a new trial. The three judges, believing there was sufficient evidence to warrant submission of the case to the jury, refused to enter judgments for defendant *n. o. v.* However, two of the judges, with one judge dissenting, granted a new trial on the ground that the evidence was not convincing. Plaintiff appealed from the order granting a new trial, but her appeal was dismissed for the reason that the Court of Appeals cannot substitute its judgment as to the weight of the evidence for that of the trial court. *Snyder v. Cearfoss*, 186 Md. 360, 46 A. 2d 607.

The cases were tried again in Frederick County in June, 1946. Judge Clark, of the Fifth Judicial Circuit, presided by assignment of the Chief Judge of the Court of Appeals. At the conclusion of the testimony, the judge directed verdicts in favor of defendant on the ground that the alleged contracts are indefinite and lack consideration. Plaintiff is now appealing from the judgments entered upon the directed verdicts.

First, we disagree with the view that the contract is too indefinite to be enforceable. While plaintiff herself was prevented from testifying concerning the agreement on account of our evidence statute (Code, 1939, Art. 35, Sec. 3), her son, Charles Harold Snyder, age 45, of Clear Spring, testified that he was present on January 1, 1922, when Jesse O. Snyder came to his home and heard him say to Mrs. Summers and Mrs. Hughes: "I will give each of you one-third of the estate of Abraham K. Snyder if you do not join with Jacob Snyder in any action he may take against me." This definite testimony

was submissible to the jury. The trial judge took the view that there was no evidence to show that Abraham's sisters knew on January 1, 1922, that he had made a will leaving most of his estate to his attorney. Nevertheless, there was evidence to show: (1) that Abraham and Jesse had long been intimate friends, Abraham's home and store adjoining Jesse's law office; (2) that Jesse had drafted Abraham's deed of trust and was acting as trustee for his entire estate; (3) that the deed of trust, which was a matter of public record in Washington County, indicated that Abraham had made a will, for it directed the trustee to distribute the trust estate in accordance with the provisions of Abraham's will; (4) that each sister would have inherited one-third of the estate if Abraham had not left any will, and Jesse promised each sister one-third of the estate if they refrained from taking any action against him; and (5) that Jacob filed a caveat to the will, and neither sister joined in the caveat. *Snyder v. Snyder*, 142 Md. 290, 120 A. 710. Furthermore, Earl E. Knepper, a vocational instructor, 54 years old, who had lived with the Snyder family nearly 40 years, testified that Jesse O. Snyder told him a number of times—in Miami, Florida, in 1937; on the way to the races at Charles Town, West Virginia, in 1938; in the law office in Clear Spring in 1939; and in the Hamilton Hotel in Hagerstown in 1940—that he had fixed everything up and would pay Elva what he had promised together with all interest and earnings on the amount. In the light of this evidence we think it may reasonably be inferred that the sisters were informed or believed that Jesse O. Snyder, Abraham's intimate friend and adviser, would receive a considerable part of the estate. Otherwise, why would he have promised each sister one-third of all he received from the estate? The law is established that where the existence of an oral contract is disputed, and the testimony is also conflicting as to its terms, it is for the jury to determine whether the contract did in fact exist and what it actually was. *American Towing & Lightering Co. v. Baker-Whiteley Coal Co.*, 111 Md. 504, 522, 75 A. 341.

Secondly, we disagree with the view that the contracts lacked consideration. It is unquestionably true that a mere promise not to prosecute a claim which is not founded in good faith gives no right of action on an agreement to pay for refraining from so acting, for a release from mere annoyance and unfounded litigation does not furnish valuable consideration. *Bryant v. Bryant*, 295 Pa. 146, 144 A. 904. So, where a person is not entitled as a matter of law to any share in an estate, and hence there is no legal basis for a caveat of a will, an agreement to refrain from contesting the will is not a valid consideration, for the threat of contest is not made in good faith. *Montgomery v. Grenier*, 117 Minn. 416, 136 N. W. 9. But it is also true that forbearance to sue for a lawful claim or demand is sufficient consideration for a promise to pay for the forbearance, if the party forbearing had an honest intention to prosecute litigation, which is not frivolous, vexatious or unlawful, and which he believed to be well founded, even though it may in fact be unfounded. *Hartle v. Stahl*, 27 Md. 157; *Bowen v. Tipton*, 64 Md. 275, 288, 1 A. 861; *Emmitsburg R. Co. v. Donoghue*, 67 Md. 383, 389, 10 A. 233, 1 Am. St. Rep. 396. We adopt the rule stated by the American Law Institute that forbearance to assert an invalid claim by a person who has not an honest and reasonable belief in its possible validity is not sufficient consideration for a contract of forbearance. 1 *Restatement, Contracts*, Sec. 76(b) We thus combine the requisite that the claim be made in good faith with the requisite that it must be reasonably doubtful. While emphasis is placed on the honesty and good faith of the claimant, forbearance is insufficient consideration if the claim forborne is so lacking in foundation as to make its assertion incompatible with honesty and a reasonable degree of intelligence. *1 Williston on Contracts*, Rev. Ed., Sec. 135.

In the case at bar the attorney who wrote the will made himself residuary legatee and received $88,546.85 out of the estate of his client, to whom he was not related. Plaintiff introduced testimony to show that on the day of the testator's death the attorney promised each sister

one-third of all he received from the estate; that in the years that followed he repeated his promise, but he failed to comply with his promise by procrastination; and finally, when he died, left nearly all his estate to his stenographer. Here, we think, are facts sufficient for the jury to determine whether the sisters had an honest and reasonable belief in the possible validity of a claim against the estate of their brother, and also whether they forbore to assert the claim. We hold that forbearance to exercise a legal right constitutes sufficient consideration for a contract, although there is no express promise to forbear, if such forbearance exists at the request of the party promising to compensate for the forbearance and in reliance upon such promise. *In re All Star Feature Corporation*, D. C., 232 F. 1004, 1009.

For these reasons we hold that it was error to withdraw the cases from the consideration of the jury. We must, therefore, reverse the judgments entered on the directed verdicts and remanded the cases for a new trial.

*Judgments reversed and new trial awarded,*
*with costs.*

MARKELL, J., filed the following dissenting opinion:

I find no evidence (as distinguished from suspicion) that Abraham's sisters would have had any valid claim against the validity of his will, made twenty years before his death, or against Jesse as beneficiary. This court has never held that the presumption of invalidity of a disputed transaction between attorney and client (*Baker v. Otto*, 180 Md. 53, 22 A. 2d 924) is applicable to a will in favor of the attorney who drew the will. In *Griffith v. Diffenderffer*, 50 Md. 466, the court distinguished between a transaction *inter vivos* and a will, and held that the fact that the beneficiary drew the will was only a suspicious circumstance and did not give rise to a presumption of invalidity. See also *Cook v. Hollyday*, 185 Md. 656, 45 A. 2d 761, 765, 766. Perhaps there can be no universal rule that a testamentary provision in favor of a lawyer who drew the will is or is not presumptively

invalid. See *Cornell Law Quarterly,* Vol. XXXI, page 80, cited in the Cook case. At all events, the sisters never disputed Abraham's will, and the will, therefore, was not a disputed transaction to which any such presumption could attach.

There is no evidence whatever that Abraham's sisters ever made or suggested any claim, valid or invalid, honest or dishonest, against his will or against Jesse, or expressly or impliedly agreed to forbear making any such claim. On the contrary, when another brother attacked the will, one of the sisters testified, soon after Abraham's death, that she did not contest her brother's right to do what he pleased with his estate. *Snyder v. Cearfoss,* 186 Md. 360, 46 A. 2d 607, 608. It cannot be assumed that her testimony was brought by a bargain with Jesse—or that such a bargain would be enforceable. There is, therefore, no consideration for Jesse's alleged promise, made more than twenty years before this extraordinary litigation was instituted—after Jesse's death, twenty years after Abraham's death, and forty years after Abraham made his will.

Plaintiff (Abraham's niece) was the wife of Jesse's brother. Jesse disappointed the expectations of his brother—and the plaintiff—by leaving his estate to his stenographer. Instead of attacking Jesse's will, this oblique attack was made against Abraham's will, made forty years before Jesse's death. It will be unfortunate if this case furnishes a precedent for a similar attack on Jesse's will twenty years hence—or on any other will long after the time for caveat has expired and after all the original parties in interest have died.