SNYDER, ADMINISTRATRIX *v.* CEARFOSS, EXECUTRIX

[No. 105, October Term, 1947.]

152

*Decided March 18, 1948.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Douglas H. Gordon* and *W. Clinton McSherry,* with
whom was *Ellsworth R. Roulette* on the brief, for the
appellant.

*Parsons Newman,* with whom were *Walter E. Sinn* and
*Francis H. Urner* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

These two actions of assumpsit were brought in the
Circuit Court for Washington County by Mrs. Elva B.
Snyder against Miss Augusta M. Cearfoss, surviving
executrix of the estate of Jesse O. Snyder, deceased
lawyer. One suit was filed by plaintiff as administratrix
of the estate of her mother, Mrs. Malinda Summers; the
other as administratrix of the estate of her aunt, Mrs.
Mary A. Hughes.

. The cases were removed to the Circuit Court for
Frederick County, where they have been tried three
times. It was shown that in 1919 Abraham K. Snyder,
of Clear Spring, suffered a paralytic stroke and was
removed to the Laurel Sanitarium. While a patient
there he made his mark to a deed of trust conveying
his entire estate, valued at about $120,000, to Jesse O.
Snyder, his attorney, to whom he was not related. In
May, 1921, Abraham was adjudged by a sheriff's jury

in Prince George's County to be mentally incompetent upon a petition filed by his brother Jacob; and the Court appointed Jacob's son, Frederick H. Snyder, and Henry F. Wingert as the incompetent's committee. The committee sought to recover the estate from Jesse, who was administering the trust under the jurisdiction of the Circuit Court for Washington County, and the action was pending when Abraham died on January 1, 1922. His next of kin were his brother Jacob and two sisters, Mrs. Summers and Mrs. Hughes, who were living in Clear Spring; but in 1902 he had executed a will making Jesse the principal beneficiary. The amount distributed to him was $88,564.85. Plaintiff's son, Charles Harold Snyder, testified that on the day Abraham died Jesse called to see Mrs. Summers and Mrs. Hughes and promised that he would pay each one-third of the amount that he received from Abraham's estate if she would not join with Jacob in any action he might take against him. Plaintiff alleged that, although they forebore from attacking the will, Jesse failed to comply with his promise.

The first trial of these cases was held in 1945 before three judges and a jury. The jury rendered a verdict in favor of plaintiff for $29,521.62 in each case. Two of the judges, with one judge dissenting, granted a new trial on the ground that the evidence was not convincing. Plaintiff appealed from the order granting a new trial, but the appeal was dismissed by the Court of Appeals. *Snyder v. Cearfoss*, 186 Md., 360, 46 A. 2d 607.

The second trial was held in 1946 with Judge Clark, of the Fifth Judicial Circuit, presiding by assignment. At the close of the testimony the judge directed the jury to find verdicts in favor of defendant on the ground that the alleged contracts were indefinite and lacked consideration. Plaintiff again appealed, and the Court of Appeals reversed the judgments and granted a new trial. *Snyder v. Cearfoss*, 187 Md., 635, 51 A. 2d 264.

The third trial was held in 1947 with Judge Clark again presiding. This time the jury rendered verdicts

156

in favor of defendant. Plaintiff now complains of five rulings on the evidence and certain portions of the charge to the jury.

First, she objects to the admission in evidence of her individual claim for $121,776.26 which she filed in 1941 against Jesse's estate, and defendant's letter refusing to pay it. She contends that her individual claim and defendant's letter rejecting it were not material, and merely revived defendant's contention, which had already been rejected by the Court of Appeals, that plaintiff was barred by the testamentary statute from bringing suit in her representative capacity. This statute provides that if a claim shall be asserted against or exhibited to an administrator or executor in any form, and he shall refuse payment thereof in writing, such claim shall be forever barred, unless the creditor shall bring suit upon the same within nine months after such rejection. Code 1939, art. 93, secs. 112, 113. One of the grounds for defendant's motion for directed verdicts at the second trial was that plaintiff was barred from recovery by the testamentary statute of limitations. The result on the present appeal makes it unnecessary to pass on that defense now. When this evidence was admitted the court refused to rule, or to permit counsel to argue, that the evidence was a bar to the present suit, but stated that it would be regarded as irrelevant unless this court should decide to rule otherwise on appeal. It was admitted solely to enable defendant to raise that question in this court. We think this was an unusual procedure, but the case was fully and fairly presented to the jury on the law and the evidence. No instruction of the court or argument of counsel gave the jury any opportunity to give effect to this evidence. Under the circumstances this evidence, whether relevant or not, was practically stricken out as soon as it was admitted and could not have been prejudicial to plaintiff or have played any part at all in the lower court.

Second, she objects to the testimony of James Bernard Smith, an employee of Hoffman Coal Company,

that, while he was employed as a rural mail carrier, he heard Abraham K. Snyder say at the store in Clear Spring that Jesse had made his money for him, and he wanted Jesse to have his money. The witness asserted that he had heard Abraham make this statement at least 20 or 25 times when "the boys around the store" tauntingly asked him what he was going to do with his money. We reaffirm the rule announced by Judge Robinson in *Griffith v. Diffenderffer,* 50 Md. 466, 482 that the declarations made by a testator as to his testamentary intentions prior to the execution of his will may be admitted in evidence either (1) to establish a charge of fraud or undue influence by showing that his will was contrary to his well settled convictions of what he thought was a just and proper disposition of his estate, or (2) to show that his will was consistent with his long cherished wishes. In this case the testimony was relevant to show that the testator understood the terms of the will and was satisfied with them. The testimony had probative value on the questions whether Mrs. Summers and Mrs. Hughes had an honest intention to prosecute litigation which they believed to be well founded, and whether such litigation would have been frivolous, vexatious or unlawful. It tended to show that Abraham's intention was common knowledge, and corroborated to some extent the testimony of Mrs. Hughes at the trial of the caveat proceedings in the Orphans' Court, hereafter referred to. *Snyder v. Snyder,* 142 Md. 290, 120 A. 710.

Third, she objects to the introduction of the deed executed by defendant on April 2, 1943. It appeared that Jesse O. Snyder, who died February 10, 1941, left a will giving the bulk of his estate to Miss Cearfoss, his secretary. The testator appointed his brother, William Firey Snyder, and Miss Cearfoss as his executors. His brother contemplated filing a caveat to the will; but on March 4, 1941, he and Miss Cearfoss entered into an agreement that he would not take any action to attack the will, and Miss Cearfoss would convey to him certain real and personal property. On the same day

Jesse's will was admitted to probate. Both executors qualified, but William Firey Snyder died in 1942. As Miss Cearfoss had not conveyed the property, William Firey Snyder's widow, Elva B. Snyder, plaintiff in the instant suits, and their son entered suit for specific performance to compel Miss Cearfoss to carry out the compromise agreement; and on April 2, 1943, Miss Cearfoss executed two deeds, one conveying real estate in Maryland, the other conveying real estate in Franklin County, Pennsylvania. On the same day Mrs. Snyder qualified as administratrix of the estates of her mother and aunt. Thereupon she filed the instant suits. We find no error in the introduction of the deed, which contained a recital that all of the debts of the estate had been paid. We hold that recitals in a deed, while not evidence against strangers, are admissible against the parties to the deed and their privies. *Wanex v. Hurst,* Md., 53 A. 2d 38; *Rhoades v. Bussinger,* Md. 53 A. 2d 419, 422.

Fourth, she objects to the transcript of certain testimony given by Mrs. Hughes at the trial of the caveat proceedings concerning Abraham's will in the Orphans' Court of Washington County in 1922. Mrs. Hughes testified in the Orphans' Court (1) that Jesse read Abraham's will in Hagerstown after the funeral, (2) that Jesse told her that he had made Abraham's money for him, and so Abraham had left it to him, (3) that she knew that Abraham "thought of nobody else" but Jesse, and (4) that when the Register of Wills asked her whether she objected to the will, she replied: "I told him I didn't expect anything. It was his own money, and he could do with it as he pleased." Miss Mary F. Shaneberger, the stenographer, who took the testimony and afterwards transcribed it, testified that the transcript produced by Register of Wills Harry Newcomer was made from her stenographic notes as taken in the Orphans' Court. It was an official record. The witness was the official court stenographer for the Circuit Court for Washington County at the time of the trial. This Court has held that the admissions of a deceased witness

in a former proceeding cannot be read to the jury by an attorney from a transcript of the testimony made from the stenographic notes. Where, however, the stenographer himself, by his testimony in court, verifies a transcript as an authentic extension of his stenographic notes, relevant admissions in the transcript are admissible. In addition to the assurance of authenticity afforded by the stenographer's oath, the transcript has official character because the stenographer is appointed by the court under statutory authority for the very purpose of preserving testimony. It is well settled that he may testify from his notes without reference to independent recollection. *Baltimore City v. State for Use of Biggs,* 132 Md. 113, 120, 103 A. 426; *Holler v. Miller,* 177 Md. 204, 9 A. 2d 250.

Fifth, she objects to the charts kept by two trained nurses, Mrs. Jesse Matthews and Mrs. Mahala Warner, who attended Jesse O. Snyder in his suite in the Hamilton Hotel from April 26 to May 10, 1940. The evidence statute provides that any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, is admissible in evidence in proof of said act, transaction, occurrence or event, if made in the regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. The term "business" includes business, profession, occupation and calling of every kind. Code 1939, art. 35, sec. 68. In this case Mrs. Matthews was the day nurse, and Mrs. Warner the night nurse. They kept a chart in the regular course of their profession, and the attending physician checked it each day when he called to see the patient. Moreover, each nurse identified the entries, which she had made as to facts within her personal knowledge. Under the statute the charts were clearly admissible. *Bethlehem-Sparrows Point Shipyard v. Scherpenisse,* 187 Md. 375, 50 A. 2d 256.

Nor have we found any prejudicial error in the charge to the jury. An oral charge need not comply with technical rules as to prayers. General Rules of Practice and Procedure, part 3, subd. 3, rule 6; *Feinglos v. Weiner,* 181 Md. 38, 28 A. 2d 577; *Larkin v. Smith,* 183 Md. 274, 37 A. 2d 340. Some of plaintiff's objections were to slight mistakes, such as misnomers. But where the charge to the jury presents a thorough and adequate summary of the facts of the case and the law applicable thereto, trivial inadvertent mistakes do not constitute reversible error. The main instruction was on the law relating to contracts of forbearance. On the second appeal we stated that forbearance to sue for a lawful claim or demand is sufficient consideration for a promise to pay for the forbearance, if the party forbearing had an honest intention to prosecute litigation, which is not frivolous, vexatious or unlawful, and which he believed to be well founded, even though it may in fact be unfounded. We further stated that forbearance to assert an invalid claim by a person who has not an honest and reasonable belief in its possible validity is not sufficient consideration for a contract of forbearance. *Snyder v. Cearfoss,* 187 Md. 635, 51 A. 2d 264. The trial judge charged the jury to determine (1) whether Mrs. Summers and Mrs. Hughes had an honest intention to join their brother Jacob in proceedings to break Abraham's will, and (2) whether they had an honest and reasonable belief in the possible success of such proceedings. His instruction followed substantially the general principle of the law relating to contracts of forbearance.

Earl E. Knepper, of Clear Spring, a teacher of carpentry in Hagerstown, testified that he heard Jesse O. Snyder remark in the home of William Firey Snyder in Clear Spring one day in 1922: "The day Abe died I promised Mary and Malinda I would give them each one-third of what I got out of Abe's estate if they didn't join Jake in any action against me, and that promise still stands." Knepper further testified that he heard Jesse repeat the statement in Miami, Florida, in Charles

Town, West Virginia, and other places. Plaintiff urges that the judge gave the jury a misleading instruction on whether the testimony as to the alleged promise was definite enough to support a contract. However, the judge presented the summary of the testimony as to the formation of the alleged contract, and the jury had sufficient information to determine whether Jesse had entered into the contract alleged.

Plaintiff also objects to the judge's comment on the chart showing that Miss Irene Helen Hoffman, Jesse's day nurse, attended him in the summer of 1940. The judge instructed the jury to consider Miss Hoffman's testimony that she always accompanied Snyder when he went out in the automobile. When objection was made to this instruction, the judge explained that it was merely his summary of the evidence. In charging the jury the trial judge is not limited to abstract instructions. It is within his province, whenever he considers it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence. He may draw the attention of the jury to the parts of it which he thinks important, and he may express his opinion upon the facts, provided that he makes it clear to the jury that all matters of fact are submitted to their determination.

Of course, the privilege of the judge to comment on the facts has its inherent limitations. The judge's discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. Chief Justice Hughes said of judge's instructions in *Quercia v. United States*, 289 U. S. 466, 53 S. Ct. 698, 699, 77 L. Ed. 1321: "In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses." But in the instant case we have not discovered any abuse of discretion in the judge's instructions.

Finally, plaintiff objects to the judge's comment on the recitals in the deed executed by Miss Cearfoss on April 2, 1943, conveying real estate to her. It was again insisted that the deed was inadmissible and that the instruction was prejudicial. However, the judge carefully reviewed the facts as to the compromise agreement of March 4, 1941, between William Firey Snyder and Miss Cearfoss, the suit in equity to enforce the agreement, and the deed executed by Miss Cearfoss. The deed contained the recital that all the debts against Jesse's estate had been paid, and that the deed was accepted by Elva B. Snyder, who was the sole beneficiary of the estates of Mrs. Summers and Mrs. Hughes. As the deed was admissible, there was no error in commenting upon it. Moreover, the comment of the judge restricted the jury to a consideration of the question whether the conduct of Mrs. Snyder in connection with this deed wilfully caused Miss Cearfoss to believe that the claims sued on in this case either did not exist or had been abandoned. This comment was at least as favorable to plaintiff as she could expect.

Finding no reversible error in the judge's ruling on the evidence or in his instructions to the jury, we will affirm the judgments for defendant.

*Judgments affirmed, with costs.*