## BALTIMORE & OHIO RAILROAD CO. *v.* ZAPF

[No. 88, October Term, 1948.]

404

*Decided February 17, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*D. Lindley Sloan,* with whom were *William A. Gunter* and *E. Stuart Bushong* and *Irvine H. Rutledge* on the brief, for the appellant.

*W. Earle Cobey,* with whom were *E. J. Ryan* and *Wagaman & Wagaman* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by the Baltimore and Ohio Railroad Company, employer, appellant, from an order of the Circuit Court for Washington County, directing the State Industrial Accident Commission, (the Commission), to pass an award of compensation to Joseph G. Zapf, employee, appellee, in accordance with the finding of a jury. The jury found that the appellee sustained an accidental personal injury on December 7, 1946, arising out of the course of his employment and further found him to be totally disabled. He was thereby entitled to the sum of $7,500.

The primary question before us is whether the trial court committed error in refusing to grant appellee's A prayer. That prayer follows: "The Court instructs the jury that there is no evidence in this case legally sufficient to show that the claimant sustained any accident on December 7, 1946, arising out of and in the course of his employment; and, therefore, the answer of the jury on the claimant's first issue must be 'no.'" We will therefore recite the facts of the case in a manner most favorable to the appellee.

Prior to December 7, 1946, the date of the alleged accident, the appellee, fifty-two years of age, had been employed by the appellant for thirty-one years. For ten years he worked in various departments and then started in appellant's rolling mill. About 1936 or 1937 he was assigned the job of "hooker" on a rough roller. On the day of the accident half axles, weighing from 325 to 330 pounds each and about nine or ten inches thick and about forty-two inches long, which came from railroad cars, were made red hot and passed through rollers. As the axles came through the rollers, the hooker caught them on an instrument known as a "spoon", and with the assistance of a tonger, these axles were raised up so as to run back through the rollers just above those from

which they had come. As these axles were red hot it was necessary to handle them quickly to prevent cooling before the rolling was completed. The hook operated by the hooker is supported in the middle by a chain attached to rafters in the ceiling. The hooker holds one end of hook and the axle is lifted by a spoon on the other end. In the appellee's claim for compensation filed with the Commission he said: "The accident was caused by lifting a steel axle 325 pounds into the rolls".

On this day, a Saturday morning, the mill started at 6 A. M. and stopped at noon. The appellee, in his testimony, when asked what happened that Saturday, said: "I had my hook waiting for it to come out of the second pass, when this axle came out it came out rather straight, I was waiting for it and it cocked and came down on my hook." He said he was "on the back end" of the hook at that time and when the axle hit the handle "it hit on the spoon of the hook and jarred me all over, I felt pain in through my back when anything hit on it, Mr. Bishop missed it when it cocked up, it did not go up in the air, it came down like this"—indicating. The Mr. Bishop, to whom he referred, was the tonger who helped him lift the axles. He said after the particular axle hit the spoon it rolled on the floor. He said: "I put my hook underneath it and tried to raise it up. Mr. Bishop tried to turn it up and I made another stab and when I raised it up a sharp pain shot up through my back." He further said when the axle hit the spoon it jarred him all over and his back "kept getting sorer". He said that these axles usually came straight out and it had never happened before, "not the way I was hurt." He said nothing about the pain to Bishop.

Appellee further testified that the pains grew worse over the weekend. He returned to work the following Monday and worked all day. He did not return to work on Tuesday. On Monday night he went to see Dr. Zimmerman who taped him up and directed that an X ray be taken of his back. After taking heat treatments in January, 1947, Zapf contracted influenza and was taken

to the hospital on February 1, 1947, where treatments on his back were continued. He developed pneumonia complicated by influenza. He was operated on and an abscess over his right kidney was cut and drained.

The evidence further shows that in 1945 he had been treated by two doctors for pain in his back and was told he had pus on the kidney and a lumbro-sacrum strain. He said in about three months he became "better." He said from October, 1945, until the date of this accident he had worked continuously without any pains in his back and except for losing six weeks from work on account of a broken finger, and ten or fifteen days on account of pains in his stomach, he had worked continuously all of this time. Dr. Topper testified that when he treated Zapf in 1945 he diagnosed the trouble "as lower back strain, lumbro-sacrum strain". He examined Zapf after the accident in December, 1946, and discovered evidence of arthritis.

Dr. Murray, called by the appellee, testified that he examined X ray pictures made of the appellee in July, 1947, and March, 1948, and that the X ray made in 1947 showed arthritis in the lower back. He also testified that an X ray picture was taken on December 10, 1946, at the direction of Dr. Zimmerman, and under questioning on cross-examination by the attorneys for the appellant, Dr. Murray stated in reference to that X ray picture: "I did not see the picture, according to his report before the State Accident Commission it showed nothing, it did not show any disease or anything of that sort according to his report." The report referred to was that of Dr. Rathbone.

The appellant contends that because the appellee did not tell his superintendent about the accident until four or five days after December 7, 1946; because in his claim before the Commission on May 27, 1947, he stated: "The accident was caused by lifting an axle 325 pounds into the rolls"; because he made no complaint to his fellow employee, Bishop; because he told the claim agent that the accident happened when he raised the axle up; and

because he testified before the jury that the first time he felt the pain strike him was "just as I was going down and raised up on the bar", that the evidence did not show that the appellee sustained an accidental personal injury, within the meaning of the Workmen's Compensation Law, Code Supp. 1947, art. 101, § 1 et seq., which caused his present disability. Appellant claims that the accident was caused by lifting the steel axle into the rollers, which was his usual work. Appellant also contends that the evidence of the appellee is too inconclusive, contradictory, and uncertain to be the basis of a legal conclusion. *Slacum v. Jolley,* 153 Md. 343, 351, 138 A. 244.

Appellant relies strongly on the case of *Jackson v. Ferree,* 173 Md. 400, 196 A. 107, 108. In that case, involving the occurrence of a hernia, the claimant testified that he was putting the rear wheel on a truck and after he had the wheel partly on the axle it stuck and "the pain came on". He "turned around and in a little while the pain disappeared". He reported this to his foreman and felt no further discomfort until that evening when he examined himself and "found 'a lump upon his stomach.'" On cross-examination he testified that he had put on "a good many wheels of the same type" that he did not fall, but as he was "shoving the wheel on it stuck and jarred me and the pain struck me." In that case this Court, in affirming the granting of a demurrer prayer, offered by the employer, was of opinion that the testimony in that case showed that claimant was subjected to no undue strain or stress or in any manner sustained an accidental injury.

In our opinion there is ample evidence here to submit the issue to the jury. There is absolute testimony from the appellee that the axle, after it "cocked up", fell on the spoon and when it so fell it jarred him and caused the pain. He also testified that when the axle accidently fell to the floor and he was trying to raise it into its proper location he felt another pain. In passing upon the demurrer prayer we must accept as true the testimony of the appellee, even though contradicted, in determining

whether the issue should be submitted to the jury. *Bethlehem-Sparrows Point Shipyard, Inc. v. Scherpenisse,* 187 Md. 375, 50 A. 2d 256; *Mayor and City Council of Baltimore v. Schwind,* 175 Md. 60, 63, 199 A. 853.

We are of opinion that there is ample evidence to submit to the jury the question as to whether this injury was accidental.

It was said by Judge Offutt in the case of *Schemmel v. T. B. Gatch & Sons Contracting & Bldg. Co.,* 164 Md. 671, at pages 680 and 681, 166 A. 39, at page 42 which is appropriate here: "The word 'accident' in its ordinary and usual implications is associated with ideas of trauma, and involves to a degree at least elements of force, violence, and surprise. But in Workmen's Compensation Law its meaning has been expanded to include any mischance resulting in physical injury to the bodily tissues produced by some unusual and extraordinary condition or happening in the employment. It has therefore been interpreted to include such untoward occurrences as the rupture of an aneurism, pulmonary and cerebral hemorrhages, hernia, infection, and heart dilation, arising out of some unusual or extraordinary condition in the employment, even where the injury was due in part to pre-existing disease or physical abnormality in the claimant. The many cases in which the question has been considered afford no more definite or sufficient basis for that construction than that the rule is one of policy rather than law, and results from an effort to construe all parts of the statute so as to harmonize them and carry out its general intent. The word 'accident' or 'accidental' is usually considered in connection with the phrase 'arising out of,' and, where it seems clear that the injury arose 'out of the employment,' the tendency of the courts has been to give to the word 'accidental' a liberal construction in harmony with the general intent of the act, so as to find the injury compensable." See also *Mayor and City Council of Baltimore v. Schwind, supra; Waddell George's Creek Coal Co. v. Chisholm,* 163 Md. 49, 161 A. 276; *Monumental Printing Co. v. Edell,* 163 Md. 551, 563, 564,

164 A. 171; *Foble v. Knefely,* 176 Md. 474, 487, 6 A. 2d 48, 122 A. L. R. 831.

During the trial of the case the appellee offered in evidence over objection the report of Dr. Rathbone, radiographer. This report on a form provided by the Baltimore and Ohio Railroad, appellant, dated December 11, 1946, contained the following: "Portion of body examined Lumbar spine and sacroiliac joints. Result of examination. There is no evidence of bone or joint injury or disease. The lumbro-sacral facets are the A-P type and frequently cause low back pain." This report was offered in evidence during the testimony of Dr. Zimmerman, called by the appellee. He testified that it was an X ray report from Dr. Rathbone, to whom he had sent Zapf for an X ray and report, and that the report was rendered to him in the usual course of his dealings with Dr. Rathbone. This report was nothing more than what Dr. Rathbone said. Certainly Dr. Zimmerman was not competent to testify as to what Dr. Rathbone concluded from an examination of those X ray plates. *United Surety Co. v. Summers,* 110 Md. 95, 110, 72 A. 775; *Myers v. State,* 137 Md. 496, 501, 113 A. 92. Compare *United Rys. & Electric Co. v. Dean,* 117 Md. 686, 702, 84 A. 75. Appellee strenuously contends that this report was admissible under Code, Article 35, Section 68, 1947 Supplement. Proof of Accounts, which provides for the introduction of certain memorandums or records made in the regular course of business. *Bethlehem-Sparrows Point Shipyard, Inc. v. Scherpenisse, supra; O'Donnell v. State,* 188 Md. 693, 53 A. 2d 688; *Carozza v. Williams,* 190 Md. 143, 57 A. 2d 782; *Morrow v. State,* 190 Md. 559, 59 A. 2d 325. Dr. Rathbone's report could not be admissible under that section of the Code. This report was based on a medical opinion which could only be given by one skilled in reading the X ray picture and by one who had examined that picture. It was not admissible as a memorandum occurring in the regular course of business, nor was it a verbal act or part of the *res gestae* or a mere hospital or nursing record. *Snyder v. Cearfoss,* 190 Md. 151, 57 A. 2d 786.

When such a technical medical report is offered, the doctor should be subject to cross-examination as to the reasons for his findings. The admission of that report in evidence was therefore error.

However, as hereinbefore set forth, the appellant on cross-examination of Dr. Murray, had previously brought out the full contents of that report of Dr. Rathbone and it was previously before the jury. The later introduction, though erroneous, was therefore not harmful error or prejudicial to the appellant. *Barber v. State*, 191 Md. 555, 566, 62 A. 2d 616, 621; *Damm v. State*, 128 Md. 665, 669, 97 A. 645; *Mazer v. State*, 179 Md. 293, 303, 304, 18 A. 2d 217; *O'Donnell v. State, supra*, 188 Md. 693, at page 698, 53 A. 2d 688, at page 690; *United States v. Gruber*, 2 Cir., 123 F. 2d 307; *State v. Smith*, 140 Me. 255, 37 A. 2d 246, 255; *State v. Cade*, 215 N. C. 393, 2 S. E. 2d 7; *Wigmore on Evidence*, Section 18, page 344 et seq.

The State Industrial Accident Commission, from whom the appeal in this case was taken to the Circuit Court, allowed the appellee compensation in accordance with the "Other Cases" provision of the Workmen's Compensation Law, Code Supp. 1947, art. 101 § 35(4), at the rate of $20 per week during the continuance of partial disability, not to exceed $3,750. The appellee's average weekly wage was $54. Although not presented in its brief, the appellant argued in this Court that, as the award was made under the "Other Cases" provision of the Code, on appeal the only question before the Circuit Court was the abuse of discretion of the Commission, to be decided by that Court and no such abuse of discretion was shown. *Egeberg v. Maryland Steel Products Co.*, 190 Md. 374, 58 A. 2d 684; *Miller v. James McGraw Co.*, 184 Md. 529, 42 A. 2d 237; *Townsend v. Bethlehem-Fairfield Shipyard*, 186 Md. 406, 47 A. 2d 365. This case does not involve a change in the amount or percentage awarded for permanent partial disability under "Other Cases." Although the award was originally made for partial disability under the "Other Cases" section of the Code, the appellee in his claim for compensation before

the Commission claimed total disability and that issue was presented to the Commission. On appeal the jury found that he was one hundred percentum permanently totally disabled which was an issue before the Commission and before the jury. There was enough evidence to go to the jury on that issue as there was evidence of no disease in the report of Dr. Rathbone. There was also presented to the jury the issue as to whether the appellee's disability was due in part to an accidental injury and in part to a pre-existing disease or infirmity, to which issue the jury answered "no."

As we find no prejudicial error the order will be affirmed.

*Order affirmed, with costs.*