STANLEY R. JACOBS ET AL. v. ATLANTCO
LIMITED PARTNERSHIP NO. 1 ET AL.

[No. 587, September Term, 1976.]

*Decided June 8, 1977.*

The cause was argued before MORTON, POWERS and LISS, JJ.

*William H. Manger,* with whom was *Patrick M. Pilachowski* on the brief, for appellants.

*Ronald G. Rayne,* with whom were *Perdue, Owrutsky & Whitehead* on the brief, for appellees.

Powers, J., delivered the opinion of the Court.

We shall commence by listing and describing the cast of major characters involved in this case, which grew out of the purchase and sale of two blocks of land, located in the northern part of Ocean City, Worcester County, Maryland. They are:

1. Stanley R. Jacobs, a lawyer and real estate developer and investor. Jacobs is the principal appellant.

2. Atlanco Limited Partnership Number One. The name appears throughout the record in several minor variations. We shall refer to it as Atlanco. On 10 August 1972, and·for some months before and after that date, this entity owned the land involved in this case, Blocks 52 and 82, on Plat No. 2, Fenwick, Maryland. Atlanco and its general partners are appellees.

3. Ronald C. Pulliam, a real estate broker, and a general partner in Atlanco.

4. Herman E. Perdue, a lawyer, and a general partner in Atlanco.

5. WTR Company, a partnership, and itself a general partner in Atlanco. Robert W. Todd is the only visible partner of WTR Company.

In a written contract of sale dated 10 August 1972, Atlanco, acting through Pulliam as a general partner, agreed to sell, and Jacobs agreed to buy, Blocks 52 and 82 for the sum of $550,000.00. A deposit of $10,000.00 was paid. The balance was to be paid at settlement, which was to be on 15 January 1973. Other provisions of the contract significant to this case were: if the buyer failed to settle prior to midnight on 15 January 1973, "this contract shall be considered null and void"; title was to be good and merchantable (but there was no provision to extend the time for settlement to clear a title defect); and time was of the essence of the agreement.

Jacobs was acting throughout for a partnership known as Bojac Investment Company, in which Jacobs and F. Ripley Bowman were the partners. On 6 January 1973 Jacobs contracted to sell Block 82 to one Josh D. Richardson, for

$300,000.00, to be settled on 15 January. Richardson promptly engaged Dale R. Cathell, an attorney in Ocean City, to examine title and prepare the papers necessary for settlement. At about the same time or within a day or two, Jacobs engaged Cathell to perform the same service for the overall transaction.

Settlement was scheduled for the morning of 15 January 1973, at Cathell's office in Ocean City. Jacobs and Richardson appeared, with the necessary funds in the form of cash, certified check, and an acceptable loan commitment. Pulliam and Todd were present. Perdue was in Salisbury, available by telephone. Cathell advised Jacobs that his examination of title had revealed a decree of the Circuit Court for Worcester County recognizing the right of one Raymond W. Clifford to occupy a portion of the property under some sort of leasehold interest. The decree, entered on 12 June 1972, indicated that Clifford had occupied a portion of Block 52, and had a construction trailer or office trailer on the property.

The decree appeared to resolve a dispute between Clifford and Todd, who was also making some use of a part of Block 52. Apparently Atlanco and its partners had been named in that suit, because the decree dismissed the case as to Atlanco and each partner therein.

The title attorney said that in his opinion the decree constituted a cloud on the title, and advised that settlement should not be held until the question was resolved. Shortly before the settlement day, Cathell had called Donald C. Davis, a law associate of Perdue's, who was representing Atlanco, and discussed the Clifford decree with him. Davis felt that the decree did not affect the title to the property. Later in the day (some or all of the persons involved were in and out of Cathell's office from time to time during the day) Pulliam informed Cathell that the partnership and Perdue insisted that settlement be made that day.

Perdue was adamant that the Clifford decree was not a cloud on Atlanco's title. It seems that everyone in the community knew that Clifford had left the area —

absconded", they called it — months before, and was reputed to be in Florida. Perdue, through a law partner who was an issuing agent for Title Guarantee Company, prepared and offered to issue a binder for an owner's title insurance policy on the property, with no exceptions. Jacobs consulted by telephone with two title insurance company offices, and concluded that a policy might not protect him against a defect of which he had actual knowledge.

Jacobs declined to settle, and notified the Atlanco partners that settlement should be deferred until the defect was cleared. At the request of Jacobs, Cathell prepared and filed a specific performance suit that afternoon. Clifford was located in Florida. The next day Mrs. Richardson, traveling down and back by airplane, obtained a release signed by Clifford and his wife.

Cathell notified all concerned that settlement was re-scheduled for the morning of 18 January 1973.[1] Everybody was present but Perdue. Reached by telephone, Perdue refused to sign the deed. He said the contract was breached when it was not settled on the 15th. He pointed out also that he was not obligated to sign the deed, because he had not signed the contract of sale, as required by Atlanco's partnership agreement, which was a matter of public record.

After one of several telephone conversations with Perdue, Cathell informed Jacobs that Perdue would sign the deed if Jacobs paid an additional $50,000.00. Jacobs then had a series of telephone conversations — four or five — with Perdue. The net result of their discussions was that Perdue reduced his demand to $25,000.00, and Jacobs agreed to pay it, in the form of a one year note to Atlanco, secured by a mortgage on the property.

The note and mortgage were drawn, and signed by Jacobs. He arranged for the dismissal of the specific performance suit he had filed when the first settlement fell through.

---

1. There may be a discrepancy concerning the actual date of settlement. There are some indications that it was on 17 January, but it makes no difference which is correct.

Perdue came to Cathell's office later that day, and signed the deed. Settlement was concluded.

All appeared well, but the appearance was deceiving. Some four months later, in June 1973, Jacobs filed a bill of complaint in the Circuit Court for Worcester County against Atlanco, its general partners, and the broker who prepared the contract of sale. As later amended, the bill alleged the execution of the contract of sale between the parties, and the refusal of Perdue to settle, unless Jacobs gave a secured note for an additional $25,000.00. It further alleged that the note was given, but that there was a total lack of consideration for it, in that Perdue was already bound by the contract to execute the deed. The complaint prayed that the court declare the note and the mortgage securing it to be null and void, or in the alternative, enter judgment against the defendants for the amount of the note and interest.

There were demurrers, motions, and various other proceedings over the next two and one half years. The note was paid, and the mortgage released. A motion by the defendants for summary judgment was heard on 21 January 1976 before Judge Edward O. Thomas. On 30 January 1976 the motion was denied, and the case was tried on the merits. At the conclusion of the trial Judge Thomas rendered an oral opinion in favor of the defendants. When a judgment was thereafter entered for the defendants, the plaintiffs took this appeal.

As we see it, the facts of this case present a textbook illustration of the law of accord and satisfaction, and raise only one real issue. The position taken by Atlanco, largely through Herman Perdue, on the question of whether the contract became null and void for failure to settle on 15 January, and on the question of whether Perdue was legally bound to execute the deed, with disagreement by Jacobs on both questions, raised the disputes upon which an accord was reached. If Atlanco gave consideration for the accord, it became binding on both sides when Jacobs provided the satisfaction — the secured note for $25,000.00.

The issue, then, is whether the position of Atlanco on

either or both of those questions was taken in the honest belief that it was an arguable position, and in good faith, or whether it was a pretext, not honestly believed, but raised for the purpose of exerting economic duress. If the former, Atlanco's agreement to yield on both questions was consideration for the accord. If the latter, Atlanco gave no valid consideration, and the accord was a nullity.

The authorities are generally in agreement in discussing the law of accord and satisfaction. In 1 Am. Jur. 2d *Accord and Satisfaction* § 1 (1962 & Supp. 1976), it is said:

> "* * * an accord and satisfaction may more properly be said to be a method of discharging a contract, or settling a cause of action arising either from a contract or a tort, by substituting for such contract or cause of action an agreement for the satisfaction thereof and the execution of such substituted agreement."

* * *

> "With respect to the terms separately, an accord is an agreement by one party to give or perform and by the other party to accept, in settlement or satisfaction of an existing or matured claim, something other than that which is claimed to be due, and the satisfaction is the execution or performance of the agreement, or the actual giving and taking of some agreed thing. The accord is the agreement and the satisfaction is the execution or performance of such agreement. When an accord is followed by a satisfaction, it is a bar to the assertion of the original claim, but until so followed, it has no effect."

A clear capsule definition is found in 1 C.J.S., *Accord and Satisfaction,* § 1 (1936 & Supp. 1976), which says:

> "Accord and satisfaction is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in

settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement, and the 'satisfaction' its execution or performance."

The same work, in discussing consideration, says, 1 C.J.S. *supra*, § 4:

"The consideration need not be adequate, nor will the courts inquire into its reasonableness, as distinguished from its existence, and its amount or value does not affect the validity of the transaction; even though it is insignificant, or merely technical, the accord and satisfaction will nevertheless be sustained, provided, of course, the consideration is of some value, however slight, in the eyes of the law, for purported consideration of no value will not support the agreement. So even a slight modification, in accordance with these principles, of the status of the parties, resulting from the terms of the new agreement, is sufficient consideration.

"Thus consideration for an accord and satisfaction exists where something substantial which the debtor was not bound by law to do is done by him, or where he abstains, at the request of the creditor, from doing something which he has a right to do; it may consist in the performance of an act, or even the giving of a promise."

We are not concerned here, and the Chancellor properly made it clear that he was not deciding whether Atlanco's contentions were right or wrong. The significance of Atlanco's forbearance to stand on its position, as consideration for the accord reached, is shown in 1 A. Corbin, *Contracts*, § 140 (1963 & Supp. 1971), where it is said:

"Claims made by one person against another are frequently disputed and may be invalid. The

claimant may not have the right or the defense that he thinks he has. Of course, if his claim is valid and correct, his forbearance to press it is sufficient consideration for a return promise; this has been discussed in the preceding sections. But forbearance to press a claim, or a promise of such forbearance, may be a sufficient consideration even though the claim is wholly ill-founded. It may be ill-founded because the facts are not what he supposes them to be, or because the existing facts do not have the legal operation that he supposes them to have. In either case, his forbearance may be a sufficient consideration, although under certain circumstances it is not. The fact that the claim is ill-founded is not in itself enough to prevent forbearance from being a sufficient consideration for a promise."

The author says further, in the same section:

"The most generally prevailing, and probably the most satisfactory view is that forbearance is sufficient if there is any reasonable ground for the claimant's belief that it is just to try to enforce his claim. He must be asserting his claim 'in good faith'; but this does not mean that he must believe that his suit can be won. It means that he must not be making his claim or threatening suit for purposes of vexation, or in order to realize on its 'nuisance value.' "

The Court of Appeals discussed forbearance to assert a claim, as consideration supporting an agreement, in *Snyder v. Cearfoss*, 187 Md. 635, 51 A. 2d 264 (1947). The Court said, at 643:

"But it is also true that forbearance to sue for a lawful claim or demand is sufficient consideration for a promise to pay for the forbearance, if the party forbearing had an honest intention to prosecute litigation, which is not frivolous,

vexatious or unlawful, and which he believed to be well founded, even though it may in fact be unfounded. *Hartle v. Stahl*, 27 Md. 157; *Bowen v. Tipton*, 64 Md. 275, 288, 1 A. 861; *Emmitsburg R. Co. v. Donoghue*, 67 Md. 383, 389, 10 A. 233, 1 Am. St. Rep. 396. We adopt the rule stated by the American Law Institute that forbearance to assert an invalid claim by a person who has not an honest and reasonable belief in its possible validity is not sufficient consideration for a contract of forbearance. 1 *Restatement, Contracts*, Sec. 76(b). We thus combine the requisite that the claim be made in good faith with the requisite that it must be reasonably doubtful. While emphasis is placed on the honesty and good faith of the claimant, forbearance is insufficient consideration if the claim forborne is so lacking in foundation as to make its assertion incompatible with honesty and a reasonable degree of intelligence. 1 *Williston on Contracts*, Rev. Ed., Sec. 135."

In *Scheffenacker v. Hoopes*, 113 Md. 111, 77 A. 130 (1910), a printer had accepted his customer's check for less than the amount of a disputed bill, tendered by the customer as full settlement. The printer did not cash the check, but had caused it to be certified by the customer's bank. The printer sued the customer for the difference. The lower court directed the jury to find for the defendant. The Court of Appeals affirmed. It said, at 115:

"This instruction was based upon the theory that the act of the plaintiff in causing the check to be certified was an acceptance of the part payment and compromise offered by the defendant in full settlement of the plaintiff's controverted demand, and that as the terms of the offer, the existence of the dispute and the fact of acceptance were uncontradicted and established conclusively an accord and satisfaction, there was no question left for the jury to determine.

"The principles applicable to a defense of this character are well settled. In the case of a liquidated claim, such as the present one may be assumed to be for the purposes of this decision, an acceptance of part of the amount in satisfaction of the whole will bar a recovery of the remainder if the settlement is supported by some consideration additional or collateral to the partial payment. *Booth v. Campbell*, 15 Md. 575; *Maddux v. Beavan*, 39 Md. 504; 1 *Poe*, sec. 654; 1 *Cyc.* 311. 'Anything which would be a burden or inconvenience to the one party or a possible benefit to the other' may constitute such a consideration; *Maddux v. Beavan*, *supra;* and the compromise of a disputed claim is a familiar and favored basis for an accord and satisfaction."

Although not necessarily in the context of the law of accord and satisfaction, courts do not hesitate to declare void, when appropriate, a purported contract entered into as a result of economic duress. In *First National Bank of Cincinnati v. Pepper*, 454 F. 2d 626 (2nd Cir. 1972), the court said, at 632:

"Under New York law, which governs, 'A contract is voidable on the ground of duress when it is established that the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of his free will.' Austin Instrument, Inc. v. Loral Corp., 29 N.Y.2d 124, 130, 324 N.Y.S.2d 22, 25, 272 N.E.2d 533, 535 (1971), and duress may take the form of unlawful restraint of property or use of wrongful economic compulsion to force a party to yield to demands that would otherwise be rejected. See Austin Instrument, Inc. v. Loral Corp., *supra* (economic duress through business compulsion), and the landmark New York decision Harmony v. Bingham, 12 N.Y. 99 (1854) (duress of property). The general rule as to duress of property or goods is that 'where one party has

control or possession of the goods of another and refuses to surrender such goods to the owner thereof except upon the latter's compliance with an unlawful demand, a contract made by the owner to emancipate his property is considered as one made under duress and thus avoidable.' "

In *Pecos Constr. Co. v. Mortgage Invest. Co.*, 459 P. 2d 842 (N.M. 1969), there was a loan commitment for $1,600,000 for a housing project. When Pecos had expended considerable sums of money on the project, Mortgage Investment declared it would not furnish the financing unless Pecos paid to another lender, a claim of $12,000 being asserted against Mortgage Investment. Pecos paid, and later sued for the amount paid, interest, and damages for delay. The trial court found that there was no bona fide dispute, and awarded judgment to Pecos. The Supreme Court of New Mexico affirmed, holding that fear of economic loss was a form of duress, and that duress, amounting to business compulsion, had been practiced on Pecos.

Appellants argue in their brief that the case presents four questions for decision by this Court. We feel that all four questions are misconceived. Two of them ask the legal validity, *vel non*, of Atlanco's position that the title to the property was good and merchantable, and that the partnership was not bound by the contract of sale because it was not signed by all of the general partners.

Those questions were not decided below, and will not be decided here, for the simple reason that the correct answer to them is not material to any issue in the case. What is material is whether Atlanco's positions on those questions were asserted in good faith, in the honest belief that they were well founded.

There was little if any conflict in the direct evidence, but the inferences to be drawn from the evidence were both disputed and controverted. The Chancellor found that Atlanco's position on each question was based upon honest belief, and was taken in good faith. The measure of our inquiry on appeal is whether the evidence was sufficient to

support those findings. We may not set aside the judgment of the lower court on the evidence unless it was clearly erroneous. Maryland Rule 1086. The regard which we must give to the opportunity of the lower court to judge the credibility of the witnesses can be of critical importance when the findings relate to intent, or a state of mind, and necessarily are arrived at largely through a process of inference.

On the second settlement day, Atlanco, through Perdue, contended that the contract of sale was no longer binding, because settlement was not made on 15 January 1973. Not only did the contract form contain a "time being of the essence" clause, but the parties had given further emphasis to the importance of timely performance by adding the typewritten provision:

"In the event that Buyer fails to settle prior to midnight, January 15, 1973, this contract shall be considered null and void with the deposit being retained by Seller as liquidated damages."

In taking the position he did, Perdue was presumably aware of the law. In *C. L. Eshelman Co. v. Friedberg*, 214 Md. 123, 133 A. 2d 68 (1957), the Court of Appeals said, at 133-34:

"When time is of the essence of a contract, it means that the performance by one party at the time, or within the period of time, specified in the contract is essential in order to enable him to require performance from the other party; it does not mean merely that time is a material matter, but that it is so material that a strict compliance in this respect is necessary to the right to require counter-performance." [Citations omitted.]

It is clearly shown in the evidence that Perdue was not only willing to complete the settlement on the 15th, but was insistent that it be completed on that day. When Jacobs declined to proceed because of what he felt, upon legal advice and with unquestioned good faith, was a defect in the title, Perdue, although he and Atlanco's legal adviser believed

that the title was good and merchantable, attempted to satisfy Jacobs's doubts by offering to provide title insurance against the possible defect.

The Chancellor could properly find, we believe, that each of the two conflicting views on the state of the title had some substance, and that neither was frivolous. In determining whether Perdue's position was taken in good faith, the Chancellor could properly consider the fact that Perdue was willing to back it up by arranging for the issuance of a policy of title insurance.

It is apparent from the testimony of both Jacobs and Perdue that Perdue's attitude changed between the two settlement dates. On the second date he was, to say the least, annoyed that settlement had not been accomplished the first time. He raised, for the first time, an objection which was equally available on the earlier date — that he was not bound because he had not signed the contract of sale. While the question is a more difficult one, we cannot say that the Chancellor clearly erred in finding that objection, as well as the first, to have been made honestly and in good faith. If Perdue's position seemed harsh, it must be remembered that it is not duress for a party to insist upon what he believes to be his legal rights.

The appellants also contend that the court erred in finding as a matter of law that Atlanco's abandonment of its dispute furnished sufficient consideration for the accord. The court made no ruling that any particular state of facts existed as a matter of law. It was at the heart of appellants' own case that on 18 January 1973 Atlanco disputed its obligation to settle under the terms of the contract, and that it retreated from that position only after it was "bought off" by the $25,000.00 note. To that fact the Chancellor added his findings of fact that Atlanco's position was based upon honest belief, and was taken in good faith. The legal ruling upon those facts was inevitable.

The remaining question argued by appellants is that the Chancellor erroneously placed upon them the burden of proving lack of consideration for the accord. We feel that the

question misinterprets the Chancellor's opening comment, made at the outset of his oral opinion. He said:

> "Well, the sum and substance of the whole thing, and the reason that I didn't grant the Summary Judgment, is that I did not truthfully feel that the Plaintiff had had his day in court to prove absence of consideration. I hadn't had the benefit of testimony from people involved, as to whether it was a valid dispute as to facts, and whether there was any valid consideration for the $25,000.00."

We do not read into that comment any expression one way or the other on burden of proof. It is clear from the Chancellor's opinion that on no issue was his mind in a "state of even balance", so as to be affected by the burden of persuasion. If the burden had been involved, it would have been upon the plaintiffs. They alleged the accord, and the satisfaction, and they assumed the affirmative of the issue they raised — that the note was invalid because there was no valid consideration for the accord.

We hold that the Chancellor correctly applied the law, and committed no error.

*Judgment affirmed.*
*Appellants to pay costs.*