## AIR POWER, INC. *v.* OMEGA EQUIPMENT CORPORATION

[No. 1730, September Term, 1982.]

*Decided May 4, 1983.*

The cause was argued before GILBERT, C. J., and ADKINS and BLOOM, JJ.

*James R. Trimm* for appellant.

*Edward J. Smith, Jr.,* for appellee.

BLOOM, J., delivered the opinion of the Court.

On May 19, 1982, Air Power, Inc., appellant, obtained a judgment by confession against Omega Equipment Corporation, appellee, in the Circuit Court for Montgomery County, in the amount of $23,269.03, plus attorney's fees of $3,275.34. To collect its judgment, Air Power caused various items of Omega's personal property in Maryland and Virginia to be attached. On August 27, 1982, before any of the attached property was sold, Omega delivered to Air Power's attorney a cashier's check in the amount of $18,085.61, payable to Air Power and its attorney. On the face of the check, in a space designated "memo," Omega's president had written, "Paid in full in settlement of all claims between Air Power and Omega" or similar words to that effect.[1] Along with the cashier's check, Omega delivered to Air Power's attorney a letter from it to him, as follows:

> "Attached hereto and tendered to you is a cashier's check payable to AIR POWER, INC. and you in the amount of $18,085.61 which represents the amount of the judgment in case No. 21498 in the Circuit Court for Montgomery County, Maryland less valid charges to and contracted by AIR POWER, INC. These charges have not been credited as agreed and required.

---

1. The precise language is unknown. Air Power's attorney obliterated the memorandum before depositing the check in his client's account.

"We request and demand that you immediately notify all courts and governmental authorities where you have filed notification of your claim that you no longer have a claim against OMEGA EQUIPMENT CORPORATION and to release to OMEGA any assets or other items seized by reason of your claim or actions. Specifically, your failure to withdraw your claim to Gradall G-660 S/N 192777 in Louisa County, Virginia represents lost revenue of $75.00 per hour."

Also accompanying the check and letter was an invoice in the amount of $7,888.76 (96 hours at $77.50 per hour, plus sales tax and delivery charges) for rental of a "Pneumatractor."

After an exchange of letters between Omega and Air Power's attorney, the latter informed the former, by letter dated September 17, 1982, that Air Power had negotiated the $18,085.61 cashier's check which Air Power considered to be a partial payment only; that Omega's "unilateral attempt to term it full payment is rejected"; and that if the balance then due, $8,595.97, was not paid within seven days, the attached properties of Omega would be sold.

Omega filed, in the confessed judgment case in Montgomery County, an affidavit and motion for an *ex parte* injunction to restrain sale or other disposition of its property under attachment in Maryland and Virginia and for an order directing Air Power to show cause why satisfaction of its judgment against Omega should not be entered.

The *ex parte* injunction and show cause order were issued as requested. Air Power responded by filing opposing affidavits. At the hearing upon the show cause order, the matter was submitted to the court (McAuliffe, John F., J.) upon the pleadings and affidavits. Neither side offered any additional evidence or objected to the show cause hearing as a vehicle for determination of the legal effect of Air Power's acceptance and negotiation of the check.

From an order directing that the judgment against Omega

be marked "PAID AND SATISFIED IN FULL," and authorizing the clerk to return to Omega the cash it had deposited as or in lieu of an injunction bond, Air Power takes this appeal, contending that the trial court erred in its findings and conclusions.

The parties submitted an agreed statement of facts, summarizing the affidavits and pleadings upon which the case was decided below. According to that statement, Omega had difficulty in paying its note to Air Power and the parties agreed that Omega would do certain work for Air Power on a particular job (which they refer to as the L Street job) with the payment for that work to be applied to the cognovit note indebtedness. Omega's claim (as per its letter and invoice attached to the cashier's check) was that, pursuant to this agreement, it had supplied equipment for the L Street job and was thus entitled to a setoff against the confessed judgment debt. Air Power disputed Omega's claim, asserting that there was no merit to that claim; that its agreement with Omega for the L Street job was for demolition work at a fixed price, which Omega failed to complete, and not for equipment rental; that Omega's equipment at the L Street job site was not the equipment designated on Omega's invoice and was on the site for only half the time Omega was charging in the invoice; and that it owed nothing to Omega for the L Street job.

On the basis of these facts, Judge McAuliffe found that an actual dispute existed between the parties and was known by both parties to exist at the time the check was given in full satisfaction of the dispute. He concluded therefrom that Air Power's acceptance of the check operated as an accord and satisfaction, entitling Omega to have the judgment against it marked paid.

Appellant contends that the court erred in finding an accord and satisfaction because 1) there was no consideration additional or collateral to the partial payment; 2) there was no honest, genuine or good faith dispute between the parties; and 3) appellant never accepted a settlement but in fact rejected it.

Appellant's contention as to consideration is based upon a well settled general rule, of ancient lineage, that a claim which is liquidated and undisputed is not .discharged by acceptance of a lesser sum tendered in full settlement. *M. & C. C. v. Allied Contractors,* 236 Md. 534, 547 (1964); *Eastover Co. v. All Metal Fabr.,* 221 Md. 428 (1960). This is so because "[a] mere agreement to accept less than the real debt would be *nudum pactum." Geiser v. Kershner,* 4 G. & J. 305, 310. "But if in addition to the part payment there be some other collateral consideration such as in law is sufficient to support a contract, then the agreement to relinquish the residue is not a *nudum pactum." Prudential Ins. Co. v. Cottingham,* 103 Md. 319 (1906).

It is equally well settled, however, that even in the case of a liquidated claim, "an acceptance of part of the amount in satisfaction of the whole will bar a recovery of the remainder if the settlement is supported by some consideration additional or collateral to the partial payment. 'Anything which would be a burden or inconvenience to the one party or a possible benefit to the other' may constitute such a consideration; . . . and the compromise of a disputed claim is a familiar and favored basis for an accord and satisfaction." (Citations omitted.) *Scheffenacker v. Hoopes,* 113 Md. 111, 115 (1910).

In *Jacobs v. Atlantco Ltd. Partnership,* 36 Md. App. 335, 340-341 (1977), we noted that the authorities are generally in agreement in discussing the law of accord and satisfaction and we accepted, as a clear capsule definition, the one found in 1 C.J.S., *Accord and Satisfaction,* §1:

"Accord and satisfaction is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement, and the 'satisfaction' its execution or performance."

Thus, if a creditor has an undisputed liquidated claim

against a debtor and the debtor in turn has a genuine disputed claim against the creditor, the creditor's acceptance of the debtor's tender of a lesser sum than the liquidated claim in full settlement of all claims between them is an accord and satisfaction. The forbearance to press the disputed claim against him is the consideration additional or collateral to the partial payment which supports the creditor's relinquishment of the residue of the debt due him. But forbearance, to be adequate consideration, must be forbearance of a claim which is asserted in good faith. This does not mean that the one asserting the claim must believe that a suit on it can be won. It does mean, however, that the claim is not made for purposes of vexation or "in order to realize on its nuisance value." 1 Corbin, *Contracts,* §140 (1963 & Supp. 1971). To that requirement of "good faith," the Court of Appeals, in *Snyder v. Cearfoss,* 187 Md. 635, 643 (1947), has imposed the additional requirement that the claim be "reasonably doubtful," i.e., not "so lacking in foundation as to make its assertion incompatible with honesty and a reasonable degree of intelligence."

Appellant's contention that there was no honest, genuine or good faith dispute between the parties, therefore, is an attack upon the adequacy of the forbearance consideration. That attack fails, however, because we cannot say that Judge McAuliffe's finding that an actual, honest, good faith dispute existed between the parties as to whether Air Power owed Omega money on the L Street job was clearly erroneous. Md. Rule 1086.

It is also contended that Omega's forbearance to assert its claim for $7,888.76 cannot be the basis for accord and satisfaction because, in deducting the full amount of that claim from its check, Omega compromised nothing — gave up nothing — in settlement of its claim. Appellant cites no authority, nor do we find any, for the proposition that forbearance, as consideration for accord and satisfaction, necessarily implies the concept of compromise or settlement of the disputed claim for something less than the full amount thereof. Even if there were such a requirement, it would

appear that by forbearing to assert its claim for breach of the agreement to credit what was due it for the L Street job against the cognovit note debt, Omega gave up a claim which was potentially greater than the amount of its invoice. The confessed judgment included interest and attorney's fees calculated on a higher amount than that which would have been due if appellant had allowed the credit.

Appellant further argues that Omega's claim for the L Street job, being unrelated to the cognovit note debt, cannot serve to "unliquidate" the undisputably liquidated judgment debt. We are referred to no authority, nor do we find any, for the proposition that in order to serve as a basis for an accord and satisfaction, the "forborne" disputed claim must arise out of the same transaction as the liquidated claim, or be one so related to the liquidated claim as to be assertible by way of a recoupment, as distinguished from a setoff or counterclaim. Even were there such a requirement, it would have been met here. The two originally unrelated claims became related by marriage when the parties agreed to credit or offset one against the other.

Air Power's final assault upon the finding of an accord and satisfaction — its contention that it never accepted the settlement but rejected it — fails because, in these circumstances, "actions speak louder than words."

In *Scheffenacker v. Hoopes, supra,* the plaintiff performed work for the defendant and submitted a bill for the agreed price of the work. The defendant, complaining about the quality of the work, tendered a check for one-half the amount of plaintiff's bill "in full settlement thereof." Defendant's letter to plaintiff, enclosing the check concluded: "If you do not care to accept such a compromise, do not use my check, and I will then reserve the right to claim for the damage I have suffered." Although plaintiff informed defendant that he did not accept the compromise and would not use the check until defendant advised him that it was intended only as part payment, he retained possession of the check and had it certified by defendant's bank. The Court of Appeals, after ruling that having the check certified consti-

tuted "use" of the check within the condition imposed by the offer of compromise, held that an accord and satisfaction had been established. As the Court pointed out:

"The plaintiff's expression of dissatisfaction with the defendant's proposal could not qualify the effect of his actual use of the check and appropriation of the defendant's money through its certification, in view of the terms of compromise under which it alone could be used. It was the *use* of the check that determined the question of the acceptance of the offer and not the verbal dissent by which it was accomplished." 113 Md. at 117.

Although neither party referred to it, we note that there has developed a conflict of authority in other jurisdictions as to whether §1-207 of the Uniform Commercial Code [2] has altered the common law of accord and satisfaction with respect to use of a check tendered as full payment, under a reservation of rights to claim the balance.[3] We decline to decide, *nostra sponte,* an issue of this nature, which was not raised below or briefed or argued here.

On the basis of the evidence before him, Judge McAuliffe concluded that appellant's deposit of the cashier's check, knowing that it had been tendered in full satisfaction of all claims, was an acceptance of the settlement, constituting an

---

**2.** Md. Com. Code Ann., §1-207. "A party who with explicit reservation of rights performs in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice,' 'under protest,' or the like are sufficient."

**3.** *See, e.g.,* the cases cited and analyzed in Rosenthal, "Discord and Dissatisfaction: Section 1-207 of the Uniform Commercial Code," 78 Columbia L. Rev. 48; Caraballo, "The Tender Trap: U.C.C. §1-207 and its Applicability to an Attempted Accord and Satisfaction by Tendering a Check in a Dispute Arising from a Sale of Goods," 11 Seton Hall L. Rev. 445; Comment, "Does U.C.C. Section 1-207 Apply to the Doctrine of Accord and Satisfaction," 11 Creighton L. Rev. 515; White and Summers, *Handbook of the Law under the Uniform Commercial Code,* §13-21 (2nd Ed., 1980); Hawkland, "The Effect of U.C.C. §1-207 on the Doctrine of Accord and Satisfaction by Conditional Check," 74 Com. L.J. 329 (1969). *See also* Restatement (Second) Contracts (1981) §281, comment d; 6 Corbin, *Contracts,* §1279 (2nd Ed. 1962 and 1982 Supp.).

accord and satisfaction under the authority of *Scheffenacker v. Hoopes, supra.* We agree with that conclusion and shall affirm the order.

> *Order affirmed.*
> *Costs to be paid by appellant.*