766 A.2d 241

**Miles X. WICKMAN**

v.

**Michael A. KANE.**

**No. 389, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Feb. 5, 2001.

Douglas Clark Hollmann, Annapolis, for appellant.

Robert Phillip Thompson (Thompson & Sugar, P.A., on the brief), Baltimore, for appellee.

Argued before HOLLANDER, DEBORAH S. EYLER, MARVIN H. SMITH, (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, Judge.

Miles X. Wickman, appellant, challenges an order of the Circuit Court for Montgomery County granting summary judgment in favor of Michael A. Kane, appellee, in Wickman's suit on a promissory note. Wickman presents the following question for review, which we have rephrased:

Did the circuit court err in ruling that his acceptance of a partial payment of the total amount due on the promissory note constituted an accord and satisfaction?

For the following reasons, we shall reverse the judgment of the circuit court.

## FACTS AND PROCEEDINGS

On June 2, 1989, Michael A. Kane and Randy C. Stewart, as makers, executed a promissory note for $225,000, with interest at 11%, amortized over a thirty year period, and payable to Miles X. Wickman. The note called for monthly payments of $2,143, with the balance due on June 2, 1994. The note further contained an acceleration clause providing that, in the event of a default on any of the obligation, in whole or in part, the balance would become due and payable at the option of the holder. It also gave the makers the right to prepay the unpaid balance, in whole or in part, without penalty.

After the balance on the note became due, Kane and Stewart continued to make monthly payments on it. On November 12, 1995, Kane wrote a check for $111,456.54, payable to Wickman. That amount equaled one-half of the outstanding balance on the note, plus interest. On the memorandum line of his check, Kane wrote: "payment in full of loan." Kane mailed the check to Wickman on November 14, 1995. He enclosed a cover letter in which he said:

As you know, in June 1989, you loaned to Randy and I, on a several basis (meaning we each were responsible for one half of the loan) the amount of $225,000. The note was due in June of 1994 and was not formally extended although payments were continued at the same interest rate of 11%.

Please find enclosed payment for my one half of the above note together with interest through the above date. The remaining principle [sic] balance of my share is $108,186. The interest is $3270.54 for a total of $111,456.54.

Since Randy is still paying you on a monthly basis, it is impossible for you to return the note marked canceled. Accordingly, would you please sign the bottom of this letter and return it to me so that I may fulfill the terms of the refinance of my portion of the note. The purpose is to acknowledge that I no longer owe you any money and that the above referenced note is paid in full.

Please call with questions.

The following statement, with a signature line for Wickman, appeared at the bottom of Kane's letter:

The undersigned hereby acknowledges receipt of $111,456.54 which represents complete and full payment of all principal and interest of Michael A. Kane's share of the note between Miles X. Wickman (as lender) and Michael A. Kane and Randy C. Stewart (as makers) originally dated June 2, 1989.

Wickman did not negotiate the check or sign the statement at the bottom of Kane's letter. On December 27, 1995, Kane and Wickman had a telephone conversation, which Kane me-

morialized as follows in a letter to Wickman, dated January 10, 1996:

In connection with our telephone conversation of December 27, 1995, I once again wish to set forth my position as clearly as possible to avoid any further misunderstanding.

The note Randy and I signed (dated June 2, 1989) which became due on June 2, 1994, was signed on a "several" basis, meaning that Randy owed half and I owed half. It was always paid out of accounts owned one half by Randy and one half by me. It was never my intention that I would be responsible for Randy's half or that Randy would be responsible for my half.

The documents that Randy and I signed in connection with our decision to part company reflect this intent and indicate that I was to pay my half of the note to you and that Randy was to make arrangements with you to pay his one half of the note. I have requested that Randy finalize this aspect of our agreement with you on more than one occasion.

It is my understanding that unless a note states that an obligation is "joint and several", then it is presumed to be "several". The note I signed does not indicate that the liability is joint and several.

I have tendered payment of my one half share of the note together with interest with my letter to you of November 14, 1995. It is my understanding that you have yet to deposit the check. I wish to be certain you understand that any interest on my one half share ceased when I tendered payment to you and that I no longer owe you any money.

Thereafter, Wickman negotiated the November 12, 1995 check. Before doing so, however, he changed the memorandum on it to read "payment in full of ½ loan," instead of "payment in full of loan."

Stewart continued to make monthly payments on the note through July 1998. He then ceased making payments and filed for bankruptcy in federal court. Wickman filed a claim in that proceeding.

Wickman brought an action on the note against Kane, in the Circuit Court for Anne Arundel County. He alleged that he had made demand upon Kane for payment under the note, but that Kane had refused. He further alleged that the note was in default and that as of August 1, 1998, the principal balance owed on it was $105,044.47, plus interest of 11% per annum. The case was transferred to the Circuit Court for Montgomery County. Kane filed an answer denying the indebtedness and raising, *inter alia,* the defense of accord and satisfaction.

Kane filed a motion for summary judgment, attaching an affidavit attesting to the facts recited above. Wickman filed an opposition and a cross-motion for summary judgment. He furnished an affidavit attesting that the note had been intended to be joint and several; that all of the payments on the note until November, 1995 had been paid by means of checks by both makers; that Kane's November 14, 1995 letter had been accompanied by releases that he had refused to sign; that he had told Kane that he would not accept his check as full payment of the obligation due under the note; and that he had amended the memorandum line of Kane's November 12, 1995 check to read " 'payment in full of ½ of loan' to indicate [his] refusal to accept [Kane's] offer that the payment would satisfy his obligation under the Note."

The circuit court held a hearing on the motions for summary judgment. It granted summary judgment in favor of Kane, ruling that there was no genuine dispute of material fact and that, as a matter of law, the action on the note was barred by the doctrine of accord and satisfaction. Three days later, the court docketed a written summary judgment order. Wickman filed a motion for reconsideration within ten days. After that motion was denied, he noted a timely appeal.

## STANDARD OF REVIEW

A circuit court may grant summary judgment when the movant demonstrates that there is no genuine dispute of material fact and that he is entitled to judgment as a matter of law. Md. Rule 2–501(e) (2000); *King v. Board of Educ.,* 354

Md. 369, 376, 731 A.2d 460 (1999). In deciding whether to grant a motion for summary judgment, the circuit court determines issues of law only. In reviewing the circuit court's grant of summary judgment, we have the same information from the record and decide the same issues of law as the circuit court decided. *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 591–92, 578 A.2d 1202 (1990). We determine whether the circuit court was legally correct in granting summary judgment. *Id.* In essence, we review the trial court's legal conclusions *de novo. Matthews v. Howell,* 359 Md. 152, 162, 753 A.2d 69 (2000).

## DISCUSSION

The parties agree that there was no genuine dispute of material fact. Wickman contends that the circuit court erred in ruling, on the undisputed facts, that his action against Kane on the note was barred by the defense of accord and satisfaction. Specifically, he argues that under Md.Code (1997 Repl. Vol.), § 3–116(a) of the Commercial Law Article ("CL"), the note as executed created a joint and several liability of Kane and Stewart, as the makers; therefore, there was no bona fide dispute as to whether Kane's obligation under the note was for the full amount of the note or one-half of the amount of the note. Because there was no such dispute, Kane's November 12, 1995 payment merely was a partial payment of a liquidated and undisputed debt that was due, which is not an accord and satisfaction, as a matter of law. Put otherwise, there was no consideration to support an accord and satisfaction, because Kane simply paid an existing debt.

Kane responds that the undisputed facts established that there was a bona fide dispute over the amount of his liability under the note, and, therefore, his forbearance on his defense to Wickman's claim against him for the full value of the note was sufficient consideration to support an accord and satisfaction. He further asserts that the undisputed facts established that Wickman accepted his $111,456.54 payment in compromise of that dispute.

■ An accord and satisfaction is a completed compromise of a disputed claim. In *Kimmel v. SAFECO Ins. Co.*, 116 Md.App. 346, 696 A.2d 482 (1997), we explained the doctrine as follows:

> [W]hen a claim is disputed, acceptance of payment, coupled with knowledge that payment is intended fully to satisfy a disputed claim, constitutes an accord and satisfaction that bars any further recovery.

116 Md.App. at 357, 696 A.2d 482. In *Jacobs v. Atlantco Ltd. Partnership*, 36 Md.App. 335, 373 A.2d 1255 (1977), we adopted the definition of accord and satisfaction found in 1 C.J.S., Accord and Satisfaction, § 1 (1936 & Supp.1976)[1]:

> Accord and satisfaction is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the "accord" being the agreement, and the "satisfaction" its execution or performance.

36 Md.App. at 340–41, 373 A.2d 1255. *See also Automobile Trade Ass'n v. Harold Folk Enter.*, 301 Md. 642, 665, 484 A.2d 612 (1984).

■ Accord and satisfaction is an affirmative defense. To prevail, the defendant must prove: 1) that a dispute arose between the parties about the existence or extent of liability; 2) that, after the dispute arose, the parties entered into an agreement to compromise and settle the dispute by the payment by one party of a sum greater than that which he admits he owes and the acceptance by the other party of a sum less than that which he claims is due; and 3) that the parties performed that agreement. *Air Power, Inc. v. Omega Equip. Corp.*, 54 Md.App. 534, 538–39, 459 A.2d 1120 (1983).

■■ The compromise of a dispute between parties will serve as consideration for an accord and satisfaction when the dispute is bona fide: that is, the dispute is asserted in good

---

1. This definition currently appears at 1 C.J.S., Accord and Satisfaction, § 2 (1985).

faith and the subject matter is reasonably doubtful. *Snyder v. Cearfoss*, 187 Md. 635, 643, 51 A.2d 264 (1947); *Air Power, Inc.*, 54 Md.App. at 539, 459 A.2d 1120. These conditions must exist because forbearance on a claim or defense relative to a dispute that is not made in good faith and is not reasonably doubtful is of no value.

> [F]orbearance, to be adequate consideration, must be forbearance of a claim which is asserted in good faith. This does not mean that the one asserting the claim must believe that a suit on it can be won. It does mean, however, that the claim is not made for purposes of vexation or "in order to realize on its nuisance value." 1 Corbin, *Contracts*, § 140 (1963 & Supp.1971). To that requirement of "good faith," the Court of Appeals, in *Snyder v. Cearfoss*, 187 Md. 635, 643 [51 A.2d 264] (1947), has imposed the additional requirement that the claim be "reasonably doubtful," i.e., not "so lacking in foundation as to make its assertion incompatible with honesty and a reasonable degree of intelligence."

*Air Power, Inc.*, 54 Md.App. at 539, 459 A.2d 1120.[2]

CL § 3–311 also is pertinent, and is consistent with the Maryland common law of accord and satisfaction. It addresses accord and satisfaction by use of an instrument. It states, in pertinent part:

> (a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) *the amount of the claim was unliquidated or subject to a bona fide dispute,* and (iii) the claimant obtained payment of the instrument, the following subsections apply.

---

**2.** Section 74 of the RESTATEMENT (SECOND) OF CONTRACTS (1981) states, in pertinent part: "Forbearance to assert or the surrender of a claim or defense which proves to be invalid is not consideration unless (a) the claim or defense is in fact doubtful because of uncertainty as to the facts or the law, *or* (b) the forbearing or surrendering party believes that the claim or defense may be fairly determined to be valid." (Emphasis added.) By contrast, in Maryland both good faith and reasonable doubt are required. *See Snyder v. Cearfoss*, 187 Md. 635, 643, 51 A.2d 264 (1947).

(b) ... the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

(Emphasis added.) [3]

■■■ The corollary to the rule that, when a claim is liquidated, an accord and satisfaction only can be found when there was a bona fide dispute between the parties about the existence or extent of liability, is that partial payment of an undisputed claim or a debt that is liquidated and presently due cannot support an accord and satisfaction. This is so because past consideration will not support a new agreement. *Reece v. Reece*, 239 Md. 649, 659, 212 A.2d 468 (1965). Accordingly, payment of a claim or debt that one already is obligated to pay, when the claim or debt is due and owing, ascertainable in amount, and not controverted, will not serve as consideration for an accord. *Eastover Co. v. All Metal Fabricators, Inc.*, 221 Md. 428, 433, 158 A.2d 89 (1960); *Air Power, Inc.*, 54 Md.App. at 538, 459 A.2d 1120. In that circumstance, there must be some collateral consideration beyond the past consideration to constitute an accord. *Scheffenacker v. Hoopes*, 113 Md. 111, 115, 77 A. 130 (1910); *Prudential Ins. Co. v. Cottingham*, 103 Md. 319, 321–22, 63 A. 359 (1906); *Commercial & Farmers Nat'l Bank v. McCormick*, 97 Md. 703, 707–08, 55 A. 439 (1903); *Barry Properties, Inc. v. Blanton & McCleary*, 71 Md.App. 280, 286, 525 A.2d 248 (1987).

In the case *sub judice*, the parties agree that Wickman's claim on the note was liquidated, i.e., it could be determined with exactness from the parties' agreement, calculated using

---

**3.** In his brief, Kane argues at length that, under CL § 3-311(b), Wickman effected an accord and satisfaction by negotiating his check, because the check as presented to Wickman bore the "conspicuous statement" that it was tendered in full satisfaction of Wickman's claim. The language of CL § 3–311(a) makes plain, however, that subsection (b) of the statute is not triggered unless and until the amount of the claim is unliquidated ( which is not the case here) *or is subject to a bona fide dispute.*

rules of arithmetic, or determined by law. *See Black's Law Dictionary* 642 (abridged 6th ed.1991); *see also Eastover Co.,* 221 Md. at 433, 158 A.2d 89 (defining "unliquidated claim"). Moreover, when Kane tendered his payment, in November 1995, the note not only was due, but was overdue.[4] The parties disagree, however, about whether there was a bona fide dispute concerning the extent of Kane's liability on the note. Wickman maintains that there was no such dispute and, therefore, Kane's November 1995 check merely was a partial payment of past consideration, insufficient to support an accord. Kane maintains that there was such a dispute and, therefore, his forbearance to defend the claim was new consideration adequate to support an accord, and Wickman accepted his payment as a compromise of the dispute. *See Scheffenacker,* 113 Md. at 115, 77 A. 130; *see also Eastover Co.,* 221 Md. at 433, 158 A.2d 89 (stating that an agreement to accept less than is due would be *nudum pactum* ).

▮ Wickman acknowledges that Kane believed in good faith that his liability on the note was several. Thus, whether Kane had a good faith belief in the merits of his defense is not an issue. *See Gruss v. Gruss,* 123 Md.App. 311, 321, 718 A.2d 622 (1998) (stating that subjective good faith is a factual determination). Rather, this case turns on whether the dispute between the parties was "reasonably doubtful." *Snyder,* 187 Md. at 643, 51 A.2d 264; 3 Richard A. Lord, *Williston on Contracts,* § 7:45, at 702 (4th ed.1992). A claim or defense can be "reasonably doubtful" because of uncertainty about the facts *or* the law. *See Snyder,* 187 Md. at 643, 51 A.2d 264 ("forbearance is insufficient consideration if the claim [or defense] forborne is so lacking in foundation as to make its assertion incompatible with honesty and a reasonable degree of intelligence") (quoting 1 *Williston on Contracts,* Rev. Ed., § 135); RESTATEMENT (SECOND) OF CONTRACTS § 74 (1981); 3

---

4. The trial court stated that Wickman was getting his money "faster than he needs to get it" and that this was consideration for accepting the accord and satisfaction. Under CL § 3–304, the note was overdue on the day after its due date, June 2, 1994. Wickman was not, therefore, getting his money faster than he was entitled to get it.

Lord, *supra*, at 704–06; *see also Pennsylvania State Univ. v. University Orthopedics*, 706 A.2d 863, 873 (Pa.Super.1998) (stating that the surrender of a claim involving uncertain facts is sufficient consideration to support a contract); *Washington v. Brown*, 92 Wash.App. 586, 965 P.2d 1102, 1107 (1998) (stating that if the claim is doubtful because of uncertainty as to the law, and it is asserted in good faith, forbearance to assert the claim constitutes sufficient consideration for a contract); *Michaelian v. State Comp. Ins. Fund*, 50 Cal.App.4th 1093, 58 Cal.Rptr.2d 133, 145 (1996) (stating that forbearance on a claim is not sufficient consideration when the claim is wholly invalid or worthless).

The alleged dispute in this case was not factual in nature. That is, the parties were not in disagreement about any of the events surrounding the execution of the note. What allegedly was in dispute was the legal significance of the note: did it have the legal effect of making each maker liable for the full amount of the debt or for one-half the amount of the debt? A claim or defense is reasonably doubtful as to the law if it does not appear obviously unfounded in law to a person with an elementary knowledge of the legal principles involved. 3 Lord, *supra*, at 705–06. We review *de novo*, for its legal correctness, the circuit court's implicit determination that Wickman's claim that the note was signed on a joint and several basis and, therefore, that Kane was liable for the entire balance, was "reasonably doubtful."

CL § 3–116(a) governs joint and several liability on an instrument, including a promissory note. It states:

> Except as otherwise provided in the instrument, two or more persons who have the same liability on an instrument as makers, drawers, acceptors, indorsers who indorse as joint payees, or anomalous indorsers are jointly and severally liable in the capacity in which they sign.[5]

---

5. When the promissory note in this case was signed, on June 2, 1989, the provision now found at CL § 3–116(a) was found in Md.Code (1975) § 3–118(e) of the Commercial Law Article. Subsection (e) provided: "Unless the instrument otherwise specifies two or more persons who

This statute and its application to the note in this case are straightforward. The note unambiguously identifies Kane and Stewart as "the Makers" and does not contain any language to the effect that their liability is anything other than joint and several. One with an understanding of only the fundamentals of the law could apply CL § 3–116 to the language of the note and determine that Kane and Stewart, as makers, were jointly and severally liable for the debt. Conversely, one could not apply the plain language of CL § 3–116(a) to the note and conclude, as Kane did, that Kane's legal liability on the note was limited to one-half the debt.

It would be apparent, even to a person with little or no legal knowledge, that, in light of CL § 3–116, Wickman's claim on the note was not reasonably doubtful. For us to hold otherwise would call into question the long-standing principle that "parties to a contract are presumed to contract mindful of the existing law and that all applicable or relevant laws must be read into the agreement. . . ." *Wright v. Commercial and Sav. Bank,* 297 Md. 148, 153, 464 A.2d 1080 (1983); *Heyda v. Heyda,* 94 Md.App. 91, 98, 615 A.2d 1218 (1992). That principle is itself one of commonsense; even a person with little legal knowledge would be loathe to think that a contract is not subject to existing laws unless they are expressly incorporated. In short, CL § 3–116(a) applies automatically and clearly to the note and establishes that Kane and Stewart were jointly and severally liable.

Kane argues that *Scheffenacker v. Hoopes, supra,* 113 Md. 111, 77 A. 130, and *Jacobs v. Atlantco Ltd. Partnership, supra,* 36 Md.App. 335, 373 A.2d 1255, nonetheless support his assertion that there was a bona fide dispute in this case. We do not find those cases analogous.

---

sign as maker, acceptor or drawer or indorser and as a part of the same transaction are jointly and severally liable even though the instrument contains such words as 'I promise to pay.' " In their briefs, the parties refer to CL § 3–116. CL § 3–118(c) does not differ substantively from CL § 3–116(a).

In *Scheffenacker v. Hoopes,* a cattleman contracted with a printer for the printing of 1,000 catalogs to be used to advertise the sale of his cattle at a country fair. The cattleman was dissatisfied with the catalogs and, at his request, the printer made some changes and printed 300 more catalogs. The printer then gave the cattleman a bill for the printing job. The cattleman sent the printer a check for one-half of the full amount and enclosed a letter indicating that the check was intended as full settlement of the bill. The letter stated that the printer's failure to properly produce the catalogs, "caused [the cattleman] great damage and injury" and that the cattleman was considering bringing a claim in recoupment, but hoped to settle the matter without a dispute by agreeing to pay one-half the bill. 113 Md. at 113, 77 A. 130. The Court of Appeals held that there was sufficient consideration to support an accord and satisfaction because the cattleman gave up his claim in a bona fide dispute.

The dispute in *Scheffenacker,* unlike the dispute in the case *sub judice,* was reasonably doubtful on the facts. The dispute involved factual questions and credibility determinations that could not be resolved by a straightforward application of the law. In the case at bar, the parties agree on the facts. The question here, unlike in *Scheffenacker,* is not whether the claim was reasonably doubtful on the facts, but whether it was reasonably doubtful on the law.

In *Jacobs v. Atlantco Ltd. Partnership,* the parties entered into a contract for the sale of real estate. The contract contained clauses providing, *inter alia,* that it would be "considered null and void" if the buyer failed to settle by the appointed date, that title was to be good and merchantable, and that time was of the essence. 36 Md.App. at 336, 373 A.2d 1255. The purchaser refused to proceed to settlement on the appointed date because the title attorney opined that there was a cloud on the seller's title in the form of a decree recognizing the right of a third party to occupy the property under a leasehold. The seller's attorney maintained that this "was not a cloud on [the] title .... [as the third party] had left the area—'absconded', [sic] they called it—months be-

fore...." *Id.* at 337–38, 373 A.2d 1255. After the parties located the third party and obtained a release from him, settlement was rescheduled. At the rescheduled settlement, the seller refused to go forward, alleging that the contract had been breached when settlement did not take place on the originally scheduled date, and that one of the seller's general partners was not legally obligated to sign the settlement documents. The seller demanded an additional $50,000 to proceed. After a series of telephone communications, the buyer agreed to pay $25,000 to the seller, in the form of a one-year note secured by a mortgage on the property. Settlement went forward. Four months later, the buyer sued the seller to set aside the note, alleging that it was not supported by consideration. The case was tried by the court, which found in favor of the seller. The court concluded that the note was a binding accord and satisfaction, with the consideration for the note being the compromise of bona fide disputes between the parties. This Court affirmed the judgment.

*Jacobs* also is distinguishable from the present case. The central question in *Jacobs* was whether the disputes raised by the seller that resulted in the compromise payment of $25,000 were made in good faith: that is, were they "taken in the honest belief that [they] were an arguable position, and in good faith, or whether [they] were a pretext, not honestly believed, but raised for the purpose of exerting economic duress." 36 Md.App. at 340, 373 A.2d 1255. We concluded that the trial court's factual finding that each of the parties' "views on the state of the title had some substance, and neither was frivolous," was not clearly erroneous. *Id.* at 347, 373 A.2d 1255. In the case *sub judice*, by contrast, Kane's good faith belief in his defense to the note was not at issue. Rather, the reasonableness of the dispute on the law was at issue. Our focus in not on the honesty with which Kane took the legal position that he was responsible for only one-half of the debt (which, if disputed, would be a factual question), but on the objective rationality of that legal position.

Wickman's claim that Kane's liability on the note was joint and several, and that Kane therefore owed the full balance on

it, was not reasonably doubtful on the law. Kane articulated the legal basis for his position concisely in his letter, stating, "It is my understanding that unless a note states that an obligation is 'joint and several,' then it is presumed to be 'several.'" This legal basis directly contradicts the clearly stated controlling law and was not "'[ ]compatible with ... a reasonable degree of intelligence.'" *Jacobs v. Atlantco Ltd. Partnership, supra,* 36 Md.App. at 343, 373 A.2d 1255 (quoting 1 *Williston on Contracts,* Rev. Ed., Sec. 135).

Kane's payment of $111,456.54 on the note was a partial payment of his already existing liability, not a payment in compromise of a bona fide dispute. Accordingly, the circuit court was legally incorrect in ruling that Wickman's claim against Kane on the note was barred by the doctrine of accord and satisfaction.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**